## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

EDUARDO LANDEVARDE CASTRO,

      Plaintiff,

      v.

de MARNE & DAY, INC., and
ALFRED GOLDSCHMIDT, *in his individual
capacity*,

      Defendants.

Civil Action No. TDC-14-2746

## MEMORANDUM OPINION

Plaintiff Eduardo Landevarde Castro filed this action against Defendants de Marne &
Day, Inc. ("de Marne & Day") and Alfred Goldschmidt alleging disparate treatment, a hostile
work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title
VII"), 42 U.S.C. §§ 2000e *et seq.* (2012). Castro also brings a claim for intentional infliction of
emotional distress ("IIED"). Presently pending are Defendants' Motion to Strike Paragraphs 38
and 39 of the Complaint and Motion to Dismiss Count IV (the IIED claim) under Federal Rule of
Civil Procedure 12(b)(6).[1] The motions are fully briefed and ripe for disposition. No hearing is

---

[1] On November 18, 2014, 19 days after the filing of these Motions, Castro filed an Amended
Complaint providing additional allegations relating to Count IV. A plaintiff can amend the
complaint once as a matter of course within 21 days after a motion to dismiss is filed. *See* Fed.
R. Civ. P. 15(a)(1)(B). In their Reply Memorandum on the Motion to Dismiss, Defendants
acknowledged the filing of the Amended Complaint and stated that "since the repleaded count
continues to be deficient for the same reasons as original Count IV, a new motion to dismiss is
unnecessary." Defs.' Reply to Mot. Dismiss at 1, n.1, ECF No. 14. Because Defendants do not
oppose the filing of the Amended Complaint and affirmatively stand on their Motion to Dismiss,
the Court considers the Amended Complaint to be the pleading subject to the Motions. The

necessary to resolve the issues. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Motions are DENIED.

## BACKGROUND

The following facts are set forth as alleged in the Amended Complaint and are taken as true for the purposes of resolving the Motions. Castro was employed as a mason worker for de Marne & Day. He alleges that Goldschmidt, his supervisor, levied abusive insults and profanity against Hispanic employees and subjected Hispanic employees to inferior working conditions. Castro is Hispanic, and Goldschmidt is white. Castro specifically alleges that Goldschmidt called Hispanic employees "fucking idiots" and "little pieces of shit," and that he called Castro a "motherfucker," a "son of a bitch," and "trash." Am. Compl. ¶ 19, ECF No. 13. Goldschmidt commented that the Hispanic employees "didn't speak any English" and that the only thing they "were good for was digging." *Id.* He refused to allow Hispanic workers to speak Spanish on the job and threatened that they could "go home" or "go back to their countries" if they did. *Id.* ¶ 22. Goldschmidt also made the Hispanic employees work in extreme heat and torrential rain, including while using slippery equipment and scaffolding. He refused to provide them protective gear, such as gloves and dust masks to wear during insulation removal.

Castro alleges that as a result of Goldschmidt's conduct, he experienced high blood pressure, psoriasis, and low self-esteem. He suffered from chronic insomnia, which caused him to wake up 15 to 20 times during the night, and frequent nightmares relating to the abuse. Castro started to "withdraw from family, friends, and social settings" and was diagnosed with anxiety, severe depression, and post-traumatic stress disorder, for which he continues to receive treatment. *Id.* ¶¶ 40, 43, 44.

---

Motion to Strike is construed as seeking to strike paragraphs 46 and 47 of the Amended Complaint, which contain the same language as paragraphs 38 and 39 of the original Complaint.

Despite Castro's internal complaints, de Marne & Day did nothing to address the verbal abuse and working conditions. Castro filed a claim with the Equal Employment Opportunity Commission ("EEOC") on August 12, 2009. On August 27, 2009, nearly two weeks after alerting de Marne & Day of his EEOC complaint, Castro was terminated. In Paragraphs 46 and 47 of the Amended Complaint, Castro described the results of the EEOC process as follows:

46.     On July 28, 2013 the EEOC issued a Determination letter with a "reasonable cause" finding.

47.     On May 30, 2014 the EEOC issued a Notice of Failure to Conciliate and a Notice of Right to Sue, with a finding of "reasonable cause."

*Id.* ¶¶ 46, 47.

## DISCUSSION

### I.     Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II.     Intentional Infliction of Emotional Distress

Defendants move to dismiss the IIED claim for failure to state a claim. To establish an IIED claim, the plaintiff must demonstrate that (1) the conduct was "intentional or reckless"; (2) the conduct was "extreme and outrageous"; (3) there is a "causal connection between the wrongful conduct and the emotional distress"; and (4) the emotional distress was severe.

*Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (citation and internal quotation marks omitted).  The elements must be pled with specificity.  *Id.* (citations omitted).

Here, Defendants challenge the IIED claim on two grounds.  First, they contend that the conduct alleged does not satisfy the "extreme and outrageous" prong; second, they assert that Castro has not alleged the severity of the emotional distress with the required specificity.  The Court disagrees as to both arguments.

For purposes of stating an IIED claim, "extreme and outrageous" conduct consists of actions "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilize community." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (internal quotation marks omitted).  Although "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" would not suffice, the extreme and outrageous character of conduct may arise from the defendant's "abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests," such as an employer acting against an employee.  *Id.* at 616. Thus, "where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress," the conduct "will be carefully scrutinized by the courts."  *See id.* at 615–16 (citing *Alcorn v. Anbro Eng'g, Inc.*, 468 P.2d 216 (Cal. 1970), in which the court found an IIED claim arising from a black employee whose supervisor, without cause or provocation, humiliated him and insulted his race).

Here, Castro has alleged a pattern in which a supervisor used his authority to abuse disadvantaged employees emotionally, including putting their health and safety in danger, in a purposeful, systematic effort to make them feel helpless and inferior, all while knowing that

4

because they did not speak English well, they had few employment options. Not only did Goldschmidt subject Castro and others to repeated verbal, profane abuse, often based on their national origin, he also deliberately placed them at significant risk of injury by forcing Castro and other Hispanic employees to work in extreme heat, on slippery scaffolding and equipment during heavy rains, or without protective gloves and masks while removing insulation. Goldschmidt purposefully forbade Castro and other Hispanics from speaking in Spanish, a language they were more comfortable with, making it difficult for them to communicate among themselves or with others. At the motion to dismiss stage, these allegations successfully plead a plausible claim.

Castro also sufficiently alleges severe emotional distress. The complaint must "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi*, 758 A.2d at 115. Although there is no bright-line rule for emotional distress, the emotional injury "need not produce total emotional or physical disablement." *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 76 (Md. 1991) (quoting *B.N. v. K.K.*, 538 A.2d 1175, 1181–82 (Md. 1988)). To the extent that psychological or medical treatment is sought, the plaintiff should allege the nature of the treatment and its duration. *See Manikhi*, 758 A.2d at 115. Not only does Castro allege that he experienced low self-esteem so severe that he began to withdraw from his family, friends, and other social settings, he also asserts that the abuse he suffered has caused high blood pressure, psoriasis, recurring nightmares, and the inability to sleep through the night. He has been diagnosed with anxiety, severe depression, and post-traumatic stress disorder and continues to seek treatment for those conditions. These allegations, collectively, state a plausible claim of severe emotional distress. *See Figueiredo-Torres*, 584 A.2d at 76 (finding that allegations that

5

the plaintiff suffered hypertension, loss of visual acuity, and depression and anxiety resulting in hospitalization were sufficient to defeat a motion for summary judgment).[2]

### III.    Motion to Strike

Defendants move to strike Paragraphs 46 and 47 of the Amended Complaint. Defs.' Mot. Strike ¶¶ 3–5, ECF No. 6. "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions are generally disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation and internal quotation marks omitted).

Defendants argue that the EEOC findings are immaterial, inadmissible as evidence, and prejudicial because Title VII discrimination claims in district court are heard *de novo*. *See Chandler v. Roudebush*, 425 U.S. 840, 844 (1976). The Supreme Court of the United States, however, has stated that prior administrative findings are admissible in a *de novo* trial under Title VII. *See id.* at 863 n.39 ("Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo."). *Cf. Alexander v. Grander-Denver Co.*, 415 U.S. 36, 60 (1974) (holding that in a Title VII case, a prior arbitrator's decision under a collective bargaining agreement "may be admitted as evidence and accorded such weight as the court deems appropriate"). The Fourth Circuit has also recognized that administrative findings are admissible in *de novo* trials. *See Laber v. Harvey*,

---

[2] Although Defendants correctly assert that individual supervisors are not liable for Title VII violations, *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998), they cite no authority for the proposition that an individual supervisor may not be held liable for common law IIED, which has different elements from a Title VII discrimination claim. The Court will not adopt such a rule. *See Harris*, 380 A.2d at 616 (referencing a successful IIED claim against an employer for actions against an employee).

438 F.3d 404, 421 (4th Cir. 2006) ("[A]dministrative findings are merely evidence – that, like any other evidence, can be accepted or rejected by the trier of fact.").

In light of this precedent, Defendants' reliance on *Chancey v. North American Trade Schools*, No. WDQ-10-0032, 2010 WL 4781306 (D. Md. Nov. 17, 2010), is misplaced. To the extent that, as in *Chancey*, there is a concern that the EEOC findings would be unduly prejudicial in a jury trial, Defendants will have the opportunity prior to trial to file a motion *in limine* to exclude such information from the trial. There is no need, at this early stage of the case, to strike the allegations based on this concern. Because the allegations are not "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), the Motion to Strike is denied.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss and Motion to Strike are DENIED. A separate Order follows.

Date: June 15, 2015

THEODORE D. CHUANG
United States District Judge